

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00237-CV

**IN THE ESTATE OF R. HOHMANN** a/k/a Raymond Charles Hohmann, Deceased

From the County Court, Gillespie County, Texas
Trial Court No. 10535
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:     Rebeca C. Martinez, Justice
     Patricia O. Alvarez, Justice
     Liza A. Rodriguez, Justice

Delivered and Filed: November 25, 2020

AFFIRMED

Appellant Bobby Hohmann ("Bobby") appeals a summary judgment in favor of appellee Sandra Hohmann Heep. We affirm the trial court's judgment.

### BACKGROUND

This appeal involves a dispute over a purported holographic will. The decedent, R. Hohmann a/k/a Raymond Charles Hohmann ("Raymond"), died on November 27, 2018. At the time of his death, Raymond owned property worth several million dollars, including 929 acres of land in Gillespie County, Texas. He was not married and he did not have any children.

When Raymond died, his caretaker and fourth cousin, Patrick Hohmann ("Patrick"), searched Raymond's home looking for a will. Patrick did not find a formally executed will, but he

found a document written on a legal pad in Raymond's handwriting. In its entirety, that document

("the written instrument") reads as follows:[1]

> Put Land so it can not be sub-divide.
> Has to stay in one track, no cross fences or
> houses built on it, no hunting except for
> hogs or coyotes. Must run Belt Galloway cattle.
>
> all tractors and implement stay on propty.
> If sold, must be restored as antque. not
> parted out.
>       all log Barns must Stay on property.
>
> Bank account not to be used as person acct.
>
> Special account at chase go to Nina Westfall
> and Priscilla Davis.
>
>   Bank
> All ~~estate~~ account go to estate.
> Chase, Llano Nation and Regind Bank.
>
>   Bobby                            929 acres
> Maurice, Robert + Patrick Hohmann = R. Hohmann Estate
> estate not to be divide into 3 pieces. stay as 1 track.
>
> | Mike Klein and Janis | 10,000 |
> |---|---|
> | Ken Bart + Susan | 10,000 |
> | Weldon West | 10,000 |
> | Cody Guthrie | 10,000 |
> | Katie " | 10,000 |

Although the written instrument is not dated, the parties agree that its contents indicate it was

created sometime between 2014 and 2018. On February 7, 2019, appellant Bobby—who is

Patrick's brother and Raymond's fourth cousin—filed an application to admit the written

instrument to probate. In his application, Bobby asserted that the written instrument is a valid

holographic will.

---

[1] The written instrument is transcribed here exactly as it appears in the record.

Appellee Heep is Raymond's first cousin and contends she is one of his heirs at law. She filed an opposition to Bobby's application, arguing the written instrument is not a valid holographic will because it "does not contain the signature of Decedent in any manner." She then filed a traditional and no-evidence motion for summary judgment on the same basis. In his response to Heep's motion for summary judgment, Bobby contended the written instrument satisfies the signature requirement because Raymond wrote the words "R. Hohmann Estate" in his own hand within the body of the document.

On January 29, 2020, the trial court granted Heep's motion for summary judgment. In its order, the court ruled that the written instrument "is not entitled to probate as a holographic will because it was not signed." Bobby now appeals.

## ANALYSIS

### *Standard of Review*

We review the trial court's grant or denial of summary judgment de novo. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). To be entitled to a traditional summary judgment, the movant must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565 (Tex. App.—San Antonio 2014, pet. denied). Once the movant establishes its right to judgment as a matter of law, the burden shifts to the respondent to produce evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(c). We consider the evidence in the light most favorable to the respondent, indulging all reasonable inferences and resolving all doubts in the respondent's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To prevail on a no-evidence motion for summary judgment, the movant must show there is no evidence of one or more essential elements of the respondent's cause of action. TEX. R. CIV.

P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). The respondent must then produce more than a scintilla of evidence to support the existence of the challenged elements. *Reese*, 148 S.W.3d at 99. Where, as here, a motion for summary judgment attacks the same element of the respondent's claims on both traditional and no-evidence grounds, we address the no-evidence arguments first. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 573 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020).

*Applicable Law*

Generally, a valid last will and testament must be: (1) in writing; (2) signed by the testator; and (3) attested by two or more credible witnesses. TEX. EST. CODE ANN. § 251.051; *Lemus v. Aguilar*, 491 S.W.3d 51, 56 (Tex. App.—San Antonio 2016, no pet.). However, a document that does not meet the attestation requirement may be admitted to probate as a holographic will if it "is handwritten entirely by the testator" and the testator "affix[ed] a signature or initial to the document to execute the instrument." *Lemus*, 491 S.W.3d at 56; *see also* TEX. EST. CODE ANN. § 251.052.

*Application*

As he did in the trial court, Bobby contends the handwritten phrase "R. Hohmann Estate" in the body of the written instrument constitutes more than a scintilla of evidence that Raymond signed that document. Heep responds that the "R. Hohmann Estate" notation identified a specific piece of property and that there is no evidence Raymond intended that notation to serve as a signature.

Bobby notes that "Texas courts have been lenient concerning the location and form of a 'signature'" on a holographic will. *Luker v. Youngmeyer*, 36 S.W.3d 628, 630 (Tex. App.—Tyler 2000, no pet.). "However, while the signature may be informal and its location is of secondary

importance, it is still necessary that the maker intend that his name or mark constitute a signature, i.e., that it expresses approval of the instrument as his will." *Id.*; *see also Adjudani v. Walker*, 177 S.W.3d 415, 418 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Here, we see no evidence in the written instrument indicating that Raymond intended the phrase "R. Hohmann Estate" to serve as his signature. *See Luker*, 36 S.W.3d at 630–31. That phrase is used only once, in connection with a purported bequest to three named individuals. When the written instrument is viewed as a whole, the phrase "R. Hohmann Estate" bears no apparent connection to any of its other provisions. *See id.* at 631 (holding the handwritten phrase "Margaret E. Whiteley Charitable Trust" did not constitute a signature because "it [did] not pertain to the testamentary provisions contained in" other pages of the purported holographic will). Because nothing in the written instrument indicates the phrase "R. Hohmann Estate" expresses Raymond's approval of that document as a whole, these facts are distinguishable from the authority upon which Bobby relies. *See Mortg. Bond Corp. v. Haney*, 105 S.W.2d 488, 491 (Tex. App.—Beaumont 1937, writ ref'd) (testator who "could neither read nor write the English language" validly signed her will by marking it with an X in front of witnesses); *Lawson v. Dawson's Estate*, 53 S.W. 64, 65 (Tex. App.—Dallas 1899, writ ref'd) (handwritten instrument that began "I, J.P.J. Dawson, being of sound mind . . . make this my last will and testament" satisfied signature requirement because "it sufficiently appears that the intent to execute was present at the time").

Bobby cites *Gilkey v. Chambers*, 207 S.W.2d 70 (Tex. 1947), and *Lane v. Sherrill*, 614 S.W.2d 619 (Tex. App.—Austin 1981, no writ), for the proposition that we must liberally construe holographic wills to effectuate the testator's intent. While we do not question this general principle, we note that neither *Gilkey* nor *Lane* involved a dispute about whether the documents in question were valid holographic wills. *Gilkey*, 207 S.W.2d at 357; *Lane*, 614 S.W.2d at 620. *Gilkey* revolved around the proper construction of the words the testator used, while *Lane* considered whether two

holographic wills could be construed together as a single will. *Gilkey*, 207 S.W.2d at 361–62; *Lane*, 614 S.W.2d at 622–23. Bobby cites no authority holding that we must liberally construe the written instrument's compliance with the signature requirement applicable to holographic wills. *See* TEX. EST. CODE §§ 251.051, 251.052.

Based on the foregoing, we conclude the written instrument itself does not support Bobby's assertion that Raymond intended the phrase "R. Hohmann Estate" to constitute a signature. *See In re Estate of Schiwetz*, 102 S.W.3d 355, 364 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied). Because Bobby did not offer any other summary judgment evidence to show that Raymond signed the written instrument, the trial court did not err by granting Heep's no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i); TEX. EST. CODE §§ 251.051, 251.052; *Luker*, 36 S.W.3d at 630–31. As a result, we need not consider whether Heep was entitled to a traditional summary judgment. TEX. R. APP. P. 47.1; *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 512 (Tex. App.—San Antonio 2013, pet. denied).

## CONCLUSION

We affirm the trial court's judgment.

Liza A. Rodriguez, Justice